UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SANDRA CAPELLAN, JUAN CAPELLAN, MARIA
CAPELLAN, RIKKEENA ROMERO, TOMALEEK B.
CEBALLOS, and SANDRA CAPELLAN as Grandmother
and Legal Guardian of R.G. (age 16),

    20 CV 867 (EK) (CLP)

        Plaintiffs,

    **FIRST AMENDED**
    -against-    **COMPLAINT**

THE CITY OF NEW YORK; DETECTIVE ALEXANDER
TAVERAS, Shield 4809, Queens Borough Narcotics South;
SERGEANT MICHAEL GRASSO, Shield 1677, Queens
Borough Narcotics South; SERGEANT RICHARD    **JURY TRIAL DEMANDED**
MEZZATESTA, Shield 3513, Queens Borough Narcotics
South; CAPTAIN CHARLES CAMPISI, Queens Borough
Narcotics South; and JOHN and JANE DOES 1-10,

        Defendants
-------------------------------------------------------------------------X

    Plaintiffs, by their attorney, Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

### NATURE OF THE ACTION

    1.    This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including an illegal entry into and search of a dwelling by employees of the New York City Police Department (NYPD).

### JURISDICTION AND VENUE

    2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and Fourteenth Amendments to the Constitution of the United States.

    3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

    4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On November 18, 2019, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to § 50-e of the General Municipal Law..

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action was being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

9. Plaintiffs demand trial by jury in this action.

## *PARTIES*

10. Plaintiffs are all African-American or Latinos.  All except Maria Capellan are residents of the United States, the State of New York, the City of New York and Kings County.

11. Plaintiff Sandra Capellan, age 64, resides in the Cyprus Hills neighborhood of Brooklyn, in a 3-story private home, 4 Adler Place, where the NYPD raid that is the subject of this lawsuit took place.

12. Plaintiff Rikkeena Romero, age 27, is the daughter of plaintiff Sandra Capellan.  She also resides in the private home where the NYPD raid that is the subject of this lawsuit took place.

13. Plaintiff Maria Capellan, age 86, is the mother-in-law of plaintiff Sandra Capellan.  She is a resident of the Dominican Republic and had been visiting her son and daughter-in-law since

early July 2019, living with them at 4 Adler Place.  She recently returned to the Dominican Republic.

14. Plaintiff Juan Capellan, age 54, is the husband of Sandra Capellan and the son of Maria Capellan.  He also resides in the private home where the NYPD raid that is the subject of this lawsuit took place.

15. Tomaleek B. Ceballos, age 21, is a grandson of plaintiff Sandra Capellan.   He also resides in the private home where the NYPD raid that is the subject of this lawsuit took place.

16. Plaintiff Sandra Capellan brings this lawsuit both individually and as Legal Guardian of her grandson, R.G., age 16.  R.G. also resides in the private home where the NYPD raid that is the subject of this lawsuit took place.

17. Plaintiff Sandra Capellan retired in 2016 after a 27-year career as a social worker for the New York City Human Resources Administration and the New York City Child Welfare Administration.

18. Plaintiff Sandra Capellan's husband, plaintiff Juan Capellan, is employed as a building maintenance worker.

19. Plaintiff Sandra Capellan's daughter, Rakkeena Romero, attends Kingsboro Community College and is also employed as a waitress.

20. Plaintiff Tomaleek B. Ceballos is a student at Queensboro Community College.

21. Plaintiff R.G. is a high school student.

22. None of the plaintiffs has ever been convicted of any criminal offense or even arrested for any criminal offense.

23 Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

24     Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers.

25     At all times relevant herein, defendant Alexander Taveras was a NYPD Detective, Shield 4809, assigned to Queens Borough Narcotics South. Defendant Taveras is the officer who applied for a warrant to search plaintiffs' home and participated in "reconnaissance" of the home in connection with the raid.

26.    At all times relevant herein, defendants Sergeant Michael Grasso, Shield 1677, Sergeant Richard Mezzatesta, Shield 3513, and Captain Charles Campisi, were NYPD officers assigned to Queens Borough Narcotics South. According to defendants' Rule 26 Initial Disclosures Grasso was the "search supervisor" of the team that raided plaintiffs' home and participated in "reconnaissance" in connection with the raid along with defendant Taveras; Mezzatesta was the "team leader;" and Campisi supervised both Grasso and Mezzatesta. Campisi is a former NYPD Chief of Internal Affairs who was demoted by former Commissioner Bratton in 2014; he has since transferred again, to Queens Borough Gang Squad North.

27.    At all times relevant herein, John and Jane Does 1-10 were NYPD officers, detectives, or supervisors who authorized, ordered, participated in or were otherwise involved pre-execution planning and/or execution and/or post-execution critique of the raid.

28.    At all times relevant herein, defendants Taveras, Grasso, Mezzatesta, Campisi and John and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

29.    At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

30. On Thursday, August 29, 2019, at approximately 5:00 – 5:15 A.M., approximately 10 police officers, all male, all in plain clothes, broke through the front door of the home at 4 Adler Place.

31. The officers did not knock before breaking into the dwelling.

32. The officers had their firearms drawn and pointed at plaintiffs.

33. All of the plaintiffs were naked or semi-naked, partially undressed or in nightclothes, and most were asleep in bed at the time of the break-in.

34. The officers ordered all of the residents of 4 Adler Place not to move and to place their hands behind their backs.

35. Plaintiff Juan Capellan was kept on the floor of his ground-floor room and an officer had a knee on his back.

36. The officers forced plaintiffs Rikkeena Romero and R.G from their upstairs bedroom to the ground floor, and forced plaintiff Tomaleek Ceballos from his basement bedroom to the ground floor.

37 Plaintiff Rikkeena Romero was naked when the police entered her bedroom, and one of the male officers had to throw her a pair of pants to cover herself.

38. Plaintiffs were all handcuffed by the police officers upon the officers' forced entry into the dwelling except for the elderly Maria Capellan.

39. The police officers searched the 3-story house extensively between approximately 5:00 – 5:15 A.M. and 8:00 – 8:30 A.M.

40. The officers ransacked the dwelling, destroying property extensively in the course of

their searching.

41. All of the handcuffed plaintiffs remained handcuffed throughout the entire episode.

42. No arrests were made and no summonses or desk appearance tickets were issued.

43. No contraband of any kind was recovered.

44. Defendants admitted to plaintiffs that the target of the raid was not any of the occupants of the house but rather a different individual.

45. Defendants admitted to plaintiffs that the target of the raid was David Vega, a friend of Rikkeena Romero.

46. David Vega does not live in the house at 4 Adler Place and has never lived there.

47. David Vega does not receive mail at the house at 4 Adler Place.

48. David Vega's only relationship to the house at 4 Adler Place is that he occasionally visited Rikkeena Romero there.

49. David Vega had never been observed by any police officer or any informant to have engaged in any illegal conduct at the house at 4 Adler Place.

50. During the incident one of the individually named defendants ordered plaintiff Rikkeena Romero to telephone David Vega.

51. Plaintiff Rikkeena Romero telephoned David Vega as the officer demanded.

52. The defendant officer who ordered Romero to call Vega threatened plaintiffs and Vega that he and the other officers would not leave 4 Adler Place until Vega came to 4 Adler Place and surrendered to police.

53. Vega refused to submit to the officer's demand.

54. Plaintiffs heard the officer call Vega a "pussy" for refusing to come to 4 Adler Place.

55. The officers eventually left 4 Adler Place without recovering any contraband, making any arrests or issuing any summonses or desk appearance tickets, and without having secured Vega's presence despite the threat to remain unless and until Vega appeared.

56. One of the officers, an Asian-American male (DT3 Michael Yu), apologized to plaintiffs.

57. Thirteen days after the raid, on September 11, 2019, David Vega was arrested elsewhere and charged with selling marijuana.

58. The criminal complaint against Vega (CR-028447-190, dated September 11, 2019), was filed in Queens County Criminal Court and is sworn to by defendant Detective Taveras.

59. The criminal complaint sworn to by defendant Taveras alleges marijuana sales by Vega to an undercover police officer on July 11, August 2, August 7, August 14 and August 16, 2019.

60. Not a single illegal act alleged in the complaint sworn to by Taveras is alleged to have taken place at 4 Adler Place.

61. Not a single plaintiff in this action is alleged in the complaint sworn to by Taveras to have participated in any of Vega's alleged offenses.

62. Not a single plaintiff in this action is even mentioned in the complaint sworn to by Taveras.

63. Taveras's sworn criminal complaint against Vega alleges that the marijuana sales all took place at the corner of Hemlock Street and Ridgewood Avenue, a location described by Taveras as being "in Brooklyn County."

64. Taveras repeatedly states in the sworn complaint that the corner of Hemlock Street

7

and Ridgewood Avenue "is approximately two blocks away from 4 Adler Place."

65. Taveras's sworn complaint does not identify any reason why the fact that the corner of Hemlock Street and Ridgewood Avenue "is approximately two blocks away from 4 Adler Place" was of any relevance to the allegations of the complaint against Vega.

66. Taveras's sworn complaint alleges that Vega arrived at the location of the sales in a white Honda Civic.

67. Taveras's sworn complaint does not allege that anyone was with Vega in the white Honda Civic.

68. Taveras's sworn complaint does not state the name of the owner of the white Honda Civic.

69. Although the white Honda Civic in question belongs to plaintiff Rikkeena Romero, Taveras's sworn criminal complaint against Vega does not mention her name and does not allege that she was with him at the time of the alleged marijuana sales or that she had any involvement in any illegal activities by David Vega.

70. Taveras's sworn complaint is against Vega only, not Vega and Rikkeena Romero.

71. Rikkeena Romero was never arrested or charged with any offense in connection with Vega's alleged wrongdoing or any other wrongdoing.

72. No resident of 4 Adler Place was ever arrested or charged with any offense in connection with Vega's alleged wrongdoing or any other wrongdoing.

73. The police seized plaintiff Rikkeena Romero's vehicle at the time of the raid

74. No contraband of any kind was found in the vehicle.

75. The vehicle was returned to plaintiff Rikkeena Romero approximately two weeks

later.

76. On September 11, 2019 -- the date of Taveras's sworn complaint and Vega's arrest on that complaint -- the prosecution allowed Vega to plead guilty to the violation of disorderly conduct in full satisfaction of all of the more serious charges set forth in Taveras's sworn complaint, indicating the prosecution's belief that the charges were extremely weak.

77. Vega received no jail sentence, he was released from police custody at the arraignment, and the record of the case was sealed.

78. In light of the facts set forth above, the raid of August 29, 2019 violated plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

79. The police had a "no-knock" warrant for the raid, issued on the basis of an affidavit submitted to a judge in Queens County by defendant Detective Alexander Taveras who, according to defendants' Rule 26 Initial Disclosures, has performed "reconnaissance" in connection with the raid along with defendant Grasso.

80. The "no-knock" warrant was not an arrest warrant for David Vega but rather was a search warrant authorizing the police to search the premises at 4 Adler Place.

81. The plain language of Taveras's sworn criminal complaint against Vega establishes that Taveras knew when applying for the "no-knock" search warrant that there was no lawful basis for a raid on the private home at 4 Adler Place:

(i) The complaint fails to allege that any resident of 4 Adler Place had engaged in any criminal activity of any kind;

(ii) The complaint fails to allege that any criminal activity of any kind had taken place at 4 Adler Place; and

9

   (iii) The complaint states only that Vegas's alleged misconduct had occurred "approximately two blocks away from 4 Adler Place."

  82. The plain language of Taveras's sworn criminal complaint against Vega establishes that Taveras obtained the "no-knock" warrant by providing the warrant-issuing magistrate with false or misleading information or by deliberately or recklessly withholding relevant information from the warrant-issuing magistrate:

   (i) The complaint fails to allege that any resident of 4 Adler Place had engaged in any criminal activity of any kind;

   (ii) The complaint fails to allege that any criminal activity of any kind had taken place at 4 Adler Place; and

   (iii) The complaint states only that Vegas's alleged misconduct had occurred "approximately two blocks away from 4 Adler Place."

  83. The law is clear that the police are not shielded from liability when a "no-knock" search warrant is obtained by deliberately or recklessly making false allegations to the warrant-issuing magistrate, or by withholding relevant information from the issuing magistrate such as the absence of any reliable information that the target of the search warrant lives at the premises or has used the premises to engage in any illegal activity, or the absence of any reliable information that any of the residents of the targeted premises have engaged in any illegal conduct at all let alone at the targeted premises, or the absence of any reliable information that any of the residents of the targeted premises have any criminal records. *McColley v. County of Rensselaer,* 740 F.3d 817 (2d Cir. 2014), a similar case to the instant case, in which the target of the raid did not live in the raided dwelling, had not been observed to have engaged in any criminal activity involving the residents of

the raided dwelling, and none of the residents of the raided dwelling had been observed to have engaged in any criminal activity at all -- let alone at the raided dwelling -- or had any criminal record:

(i) The police are liable if the affidavit in support of the warrant "'knowingly and intentionally, or with reckless disregard for the truth, made a false statement…or omitted material information, and that such false or omitted information was "'necessary to the finding of probable cause."' *McColley*, 740 F.3d at 823, quoting *Soares v. Connecticut*, 8 F. 3d 917, 920 (2d Cir. 1993), which in turn quoted *Golino v. City of New Haven*, 950 F.2d 592, 604 (2d Cir. 1991).

(ii) The Circuit further held in *McColley* that "recklessness is inferred when the omitted information was 'clearly relevant to the determination of probable cause.'" 740 F.3d at 823.

(iii) The Circuit also held that "any omissions" in the presentation to the warrant-issuing magistrate "become all the more glaring because any material omission necessarily alters the 'totality of circumstances upon which confidential information is to be assessed. Each omitted fact necessarily alters this totality." *Id*. at 824.

84. When applying for the "no-knock" search warrant Taveras knew, or should have known had he engaged in even the most rudimentary inquiry required by the Fourth Amendment and by numerous NYPD regulations, that (i) the one and only target of the raid, David Vega, did not live in the house at 4 Adler Place and had rarely been there, (ii) Vega had never been observed engaging in any criminal activity at the house and (iii) none of the none of the residents of the raided dwelling had been observed to have engaged in any criminal activity at all, let alone at the raided dwelling.

85. Taveras knew or should have known when applying for the "no-knock" search warrant that none of the residents of 4 Adler Place has ever been convicted of any criminal offense or

11

even arrested for any criminal offense.

86. The search warrant necessarily was obtained and executed in violation of numerous guidelines and requirements issued by the Police Commissioner in the wake of the death of Ms. Alberta Spruill during a raid in Harlem in May 2003, to safeguard the public against applications for and execution of search warrants based upon questionable information including, but not limited to:

(i) the pre-execution investigation and documentation required by NYPD Patrol Guide (PG) 212-75, including, but not limited to, investigation and documentation into who lives in the dwelling, whether any of the residents have any criminal records or outstanding warrants;

(ii) the Search Warrant Execution guidelines (PG 221-17);

(iii) the Formal Post-Execution Critique (PG 212-106) that must be prepared by the Commanding Officer who supervised execution of the warrant and the review of that Critique by overhead command -- especially important in cases where execution of a search warrant produces no contraband and no arrests;

(iv) Commissioner Kelly's report to the Mayor on the *Spruill* case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02); and

(v) Commissioner Kelly's testimony before the New York City Council Committee on Public Safety (June 4, 2003) stating, *inter alia*, that a supervisor "must conduct observations of the specific location in order to confirm and validate" the allegations of an application for a search warrant and that "you need more information, more observations on the part of Police Department personnel …to

allow us to go forward in the execution of warrants."

87. Defendants' failure to comply with the above-referenced NYPD rules and regulations is relevant to plaintiffs' allegations of defendants' disregard for plaintiffs' rights under the Constitution of the United States and the Constitution of the State of New York, and is direct evidence in support of plaintiffs' pendent state law claims of negligence by defendants

88. The raid has left plaintiffs, traumatized, shattered and frightened.

89. Plaintiffs have had trouble sleeping since the day of the raid.

90. Plaintiffs are fearful that if the police could do this sort of thing to them once it could easily happen again.

91. Plaintiffs are scared that they have no defense against this kind of police intrusion into the sanctity of a dwelling.

## FIRST CLAIM FOR RELIEF

92. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91.

93. The individually named defendants and John and Jane Does 1-10, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

## SECOND CLAIM FOR RELIEF

94. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91 and 93.

95. The conduct toward plaintiffs alleged herein constituted an illegal entry into and search of a dwelling, false imprisonment, destruction of property, and employee negligence.

96. The conduct toward plaintiffs alleged herein subjected them to trauma, shock,

debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### THIRD CLAIM FOR RELIEF

97.     Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91, 93 and 95-96.

98.     At all times relevant herein, the individually named defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally;

(b)     Punitive damages against all individually named defendants, jointly and severally;

(c)     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         October 28, 2020

/s/ Joel Berger
**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
(212) 687-1425
**ATTORNEY FOR PLAINTIFFS**